IN THE CIRCUIT COURT OF THE EIGHTEENTH JUDICIAL *Chris Kachiroubas*
WHEATON, DuPAGE COUNTY, ILLINOIS

e-filed in the 18th Judicial Circuit Court
********* DuPage County *********
TRANS# : 3691302
2015MR000989
FILEDATE : 07/09/2015
Date Submitted : 07/09/2015 02:20 PM
Date Accepted : 07/09/2015 02:37 PM
MARY SALEMI
CM 9/8/15 2007 9AM
************************

| | | |
|---|---|---|
| CHICAGO-METROPOLITAN FIRE PREVENTION COMPANY, an Illinois Corporation, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. |
| | ) | |
| AMERICAN ALTERNATIVE INSURANCE CORPORATION, Organized under laws of Delaware Defendant, | ) | 2015MR000989 |
| | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES the Plaintiff, CHICAGO METROPOLITAN FIRE

PREVENTION COMPANY, an Illinois corporation, by its attorneys Mark D.

Manetti of Manetti & Griffith., Ltd., and Mark Rouleau of Rouleau Law and

for its Complaint for Declaratory Judgment against the Defendant

AMERICAN ALTERNATIVE INSURANCE CORPORATION, alleges the

following:

### COMMON ALLEGATIONS

1.      Chicago Metropolitan Fire Prevention Company (hereinafter

"Chicago Metro") is an Illinois corporation with its principal place of

business in Elmhurst, Illinois, and claims to be entitled to costs of defense on

a policy issued by AAIC to Lisle-Woodridge Fire Protection District

Page 1 of 15

(hereinafter "the District") for those periods during which: American Alternative Insurance Corporation (hereinafter "AAIC") had notice of the possibility of Chicago Metro's status as an insured or potential insured, entitled to the cost of defense at the expense of AAIC; and, after dismissal of the federal litigation (hereinafter identified in Paragraph 4).

2.    AAIC is a foreign insurance corporation organized and existing under the laws of the State of Delaware, which maintains its principal place of business in Princeton, New Jersey, and which at all times herein relevant was authorized to transact insurance business in the State of Illinois and transacted business in the County of Dupage.

3.    AAIC issued its policy of liability insurance to the District, bearing policy number VFIS-TR-2060972-02/000, for the effective period of December 31, 2009 to December 31, 2010, hereinafter referred to as "Insurance Policy".

4.    ADT Security Services, Inc., Alarm Detection Systems, Inc., D.M.C. Security Systems, Inc., Illinois Alarm Services, Inc., and SMG Security Systems, Inc. (hereinafter "the Claimants") filed a "Verified Complaint for Constitutional Rights Violations, Antitrust Violations, and Other Claims Seeking Preliminary and Permanent Injunctions and Other

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

Relief" against the District and Chicago Metro in the United States District Court for the Northern District of Illinois, Eastern Division, under Cause No. 10 C 04382, seeking compensatory and punitive damages and other relief for alleged intentional and deliberate conduct, hereinafter referred to as "Federal Litigation".

5.     In the Federal Litigation, the Claimants alleged that the Chicago Metro's liability, at least in part, derived from the conduct of the District, all of which more fully appeared in the Federal Litigation "Verified Complaint for Constitutional Rights Violations, Antitrust Violations, and Other Claims Seeking Preliminary and Permanent Injunctions and Other Relief".

6.     On information and belief, the District tendered the Federal Litigation to AAIC for indemnity and coverage after the District was served with the Federal Litigation and on information and belief AAIC accepted defense under a reservation of rights sometime after the District's tender.

7.     On numerous occasions, Chicago Metro asked the District's representatives and the District's counsel, Martin LaPointe, if the District had liability insurance.

Document received on 2015-07-09-14.20.18.0 Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

8.    On information and belief Chicago Metro alleges that Martin LaPointe was at all times relevant hereto retained by AAIC to represent the District in the underlying litigation.

9.    On information and belief, AAIC knew Chicago Metro was searching for potential insurance coverage either through the District's communication with AAIC, communication from Martin LaPoint to AAIC; or as a result of the communications from Chicago Metro and its counsel to Martin LaPointe.

10.    Chicago Metro eventually learned of the Insurance Policy through a freedom of information request received shortly before Chicago Metro tendered its claim for defense and indemnity to AAIC on February 11, 2011.

11.    AAIC eventually agreed on April 15, 2011 to provide defense to Chicago Metro under a reservation of rights from the February 11, 2011 tender; however, Chicago Metro contends that AAIC had sufficient notice of Chicago Metro's status as an additional insured and a right to defense or potential right of defense under the Insurance Policy when it received a copy of the Federal Litigation "Verified Complaint for Constitutional Rights Violations, Antitrust Violations, and Other Claims Seeking Preliminary

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

and Permanent Injunctions and Other Relief" or as a result of the inquiries
and communications regarding the existence of liability insurance.

12.     Subsequently, AAIC filed a Complaint for Declaratory Judgment
in the Circuit Court of the Eighteenth Judicial District to determine Chicago
Metro's status as an additional insured and on its duty to defend the District
and Chicago Metro as a result of the February 11, 2011 tender.

13.     The trial court ruled that Chicago Metro was an additional
insured under the Insurance Policy and AAIC had a duty to defend Chicago
Metro.

14.     AAIC appealed to the 2nd District Appellate Court which ordered
that Chicago Metro was an additional insured under the Insurance Policy and
AAIC had a duty to defend Chicago Metro until a court found Chicago Metro
had no liability as a result of the conduct of the District.  The Order entered in
*American Alternative Insurance Co. v. Lisle Woodridge Fire Protection
District,* 2014 Il App (2d) 130803 U is attached hereto and incorporated
herein as "Plaintiff's Exhibit 1" or "Appellate Court Order".  See paragraphs
36 and 37.

Document received on 2015-07-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

15.     The Appellate Court Order is determinative of Chicago Metro's status as an additional insured under the Insurance Policy and right to a defense of the Federal Litigation.

16.     The Federal Litigation was dismissed on February 17, 2015 without appeal pursuant to a finding that the Plaintiffs no longer had standing to pursue their claims.  Plaintiffs were allowed to file a petition for fees and costs.  See Dismissal Order attached hereto and incorporated herein as "Plaintiff's Exhibit 2" or "Dismissal Order".

## Count I

### DECLARATORY JUDGMENT DUTY TO DEFEND PRIOR TO 2/11/2011 TENDER

1 - 16 Chicago Metro adopts and repeats the allegations of 1 through 16 as and for allegations 1 through 16 hereof as though the same were fully set forth herein verbatim.

17.     AAIC contends that it had no duty or obligation to defend Chicago Metro in connection with the claims made against Chicago Metro in the Federal Litigation prior to February 11, 2011.

18.     Chicago Metro contends that it was entitled to: 1) notice of its status as, or potentially as, an additional insured under the Insurance Policy;

Document received on 2015-07-09.14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2) defense of the claims made against Chicago Metro in the Federal

Litigation ; 2) notice from AAIC that AAIC would not provide a defense of

the claims made against Chicago Metro in the Federal Litigation; or, notice of

AAIC's claim to determine the rights and duties of AAIC and Chicago Metro

under the Insurance Policy regarding the claims in the Federal Litigation

prior to February 11, 2011.

19.     Prior to April 15 2011, when AAIC agreed to defend Chicago

Metro under a reservation of rights based upon the February 11, 2011 tender,

AAIC had not notified Chicago Metro: 1) of its status as, or potentially as, an

additional insured under the Insurance Policy; 2) that AAIC would defend the

claims made against Chicago Metro in the Federal Litigation; 2) that AAIC

would not provide a defense of the claims made against Chicago Metro in the

Federal Litigation; or, that AAIC intended to file a suit to determine the rights

and duties of AAIC and Chicago Metro under the Insurance Policy regarding

the claims in the Federal Litigation.

20.     On information and belief, AAIC contends that it had no duty to

Chicago Metro prior to February 11, 2011 to notify Chicago Metro that: 1)

Chicago Metro was, or potentially was, an additional insured under the

Insurance Policy; 2) AAIC would defend the claims made against Chicago

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

Metro in the Federal Litigation; 2) that AAIC would not provide a defense of the claims made against Chicago Metro in the Federal Litigation; or, that AAIC intended to file a suit to determine rights and duties of AAIC and Chicago Metro under the Insurance Policy regarding the claims in the Federal Litigation.

21.    The foregoing contentions of AAIC are denied by Chicago Metro.

22.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court.

23.    Pursuant to the terms of section 5/2-701 of the Illinois Code of Civil Procedure (735 ILCS §5/2-701), this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

## COUNT II

## DECLARATORY JUDGMENT PAYMENT OF UNIFIED
## RATE FOR ASSOCIATES BILLING LESS THAN $325 HOURLY

1-16   Chicago Metro adopts and repeats the allegations of paragraphs 1 through 16 of Count I  as and for paragraphs 1 - 16 of this Count II as though the same were fully set forth herein verbatim.

17.   Chicago Metro contends that it and AAIC had an agreement that AAIC would pay a unified rate for all Holland & Knight LLP attorneys providing legal services in defense of Chicago Metro.

18.   On information and belief AAIC contends that AAIC agreed to pay $325 per hour for attorneys charging more than $325.00 per hour but AAIC did not agreed to pay $325 per hour for attorneys billing less than $325.00 per hour in defense of Chicago Metro.

19.   The foregoing contentions of AAIC are denied by Chicago Metro.

20.   By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined  by a judgment or order of this Court.

21.   Pursuant to the terms of section 5/2-701 of the Illinois Code of Civil Procedure (735 ILCS §5/2-701), this Court has the power to declare and

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

adjudicate the rights and liabilities of the parties hereto and to adjudicate the

final rights of all parties and to give such other and further relief as may be

necessary to enforce the same.

## COUNT III

### DECLARATORY JUDGMENT COST OF DEFENSE
### FOLLOWING DISMISSAL OF THE FEDERAL CLAIMS

1- 16 Chicago Metro adopts and repeats the allegations of paragraphs 1

through 16 of Count I as and for paragraphs 1 - 16 of this Count III as though

the same were fully set forth herein verbatim.

17.     Chicago Metro contends that when the Federal Litigation was

dismissed on February 17, 2015, that there was no longer a potential conflict

in the representation of Chicago Metro by AAIC and that AAIC should have

undertaken the defense of Chicago Metro solely at the expense of AAIC on

the issue of attorney fees.  See Exhibit 2 or Dismissal Order.

18.     On information and belief, AAIC contends that it had no duty to

defend Chicago Metro solely at the expense of AAIC after entry of the

Dismissal Order.

19.     The foregoing contentions of AAIC are denied by Chicago

Metro.

Page 10 of 15

20.    By reason of the foregoing, an actual and justiciable controversy exists between the parties and each of them, which may be determined by a judgment or order of this Court.

21.    Pursuant to the terms of section 5/2-701 of the Illinois Code of Civil Procedure (735 ILCS §5/2-701), this Court has the power to declare and adjudicate the rights and liabilities of the parties hereto and to adjudicate the final rights of all parties and to give such other and further relief as may be necessary to enforce the same.

## PRAYERS FOR RELIEF

WHEREFORE, the Plaintiff, CHICAGO METROPOLITAN FIRE PREVENTION COMPANY, an Illinois corporation, prays that this Court enter judgments finding and declaring the rights of the parties as follows:

**As to COUNT I:**

A.    That AMERICAN ALTERNATIVE INSURANCE CORPORATION had the duty or obligation to notify CHICAGO METROPOLITAN FIRE PREVENTION COMPANY prior to February 11, 2011, that: 1) Chicago Metro was, or potentially was, an additional insured under the Insurance Policy; 2) AAIC would defend the claims made against

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

Chicago Metro in the Federal Litigation; 2) that AAIC would not provide a defense of the claims made against Chicago Metro in the Federal Litigation; or, that AAIC intended to file a suit to determine the rights and duties of AAIC and Chicago Metro under the Insurance Policy regarding the claims in the Federal Litigation.

B.     That AMERICAN ALTERNATIVE INSURANCE CORPORATION breached its duty or obligation to notify CHICAGO METROPOLITAN FIRE PREVENTION COMPANY prior to February 11, 2011 that: 1) Chicago Metro was or potentially was an additional insured under the Insurance Policy; 2) AAIC would defend the claims made against Chicago Metro in the Federal Litigation; 2) that AAIC would not provide a defense of the claims made against Chicago Metro in the Federal Litigation; or, that AAIC intended to file a suit to determine the rights and duties of AAIC and Chicago Metro under the Insurance Policy regarding the claims in the Federal Litigation

C.     That the Court fix a date when the duty to notify CHICAGO METROPOLITAN FIRE PREVENTION first existed.

D.     That the Court determine the amount of fees paid prior to February 11, 2011 and damages sustained by CHICAGO METROPOLITAN

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

FIRE PREVENTION COMPANY due to AMERICAN ALTERNATIVE INSURANCE COMPANY'S breach and enter judgment in favor of Plaintiff and against Defendant in said amount, plus costs incurred herein and have execution issue therefore instanter.

**As to Count II:**

E.    That AMERICAN ALTERNATIVE INSURANCE CORPORATION had the duty or obligation to pay defense costs at the unified hourly attorney rate of $325 per hour to CHICAGO METROPOLITAN FIRE PREVENTION COMPANY after February 11, 2011 for all Holland & Knight LLP attorneys providing defense to Chicago Metro in the Federal Litigation.

F.    That AMERICAN ALTERNATIVE INSURANCE CORPORATION breached its duty or obligation to pay CHICAGO METROPOLITAN FIRE PREVENTION COMPANY for attorney defense fees when it paid less than $325.00 per hour after February 11, 2011.

G.    That the Court determine the amount of fees paid below the unified rate of $325 per hour after February 11, 2011 and damages sustained by CHICAGO METROPOLITAN FIRE PREVENTION COMPANY due to AMERICAN ALTERNATIVE INSURANCE COMPANY's breach and

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

enter judgment in favor of Plaintiff and against Defendant in said amount, plus costs incurred herein and have execution issue therefore instanter.

**As to Count III:**

    H.    That AMERICAN ALTERNATIVE INSURANCE CORPORATION had the duty or obligation to solely defend CHICAGO METROPOLITAN FIRE PREVENTION COMPANY after entry of the Order of Dismissal.

    I.    That AMERICAN ALTERNATIVE INSURANCE CORPORATION breached its duty or obligation to solely defend CHICAGO METROPOLITAN FIRE PREVENTION COMPANY after entry of the Order of Dismissal.

    J.    That the Court fix a date when AMERICAN ALTERNATIVE INSURANCE CORPORATION's duty or obligation to solely defend CHICAGO METROPOLITAN FIRE PREVENTION first existed.

    K.    That the Court determine the amount of fees paid and damages sustained by CHICAGO METROPOLITAN FIRE PREVENTION after AMERICAN ALTERNATIVE INSURANCE CORPORATION's duty or obligation first existed and enter judgment in favor of Plaintiff and against

Defendant in said amount, plus costs incurred herein and have execution

issue therefore instanter.

Respectfully Submitted,

CHICAGO METROPOLITAN FIRE PREVENTION

BY: _____
     Mark D. Manetti, one of Plaintiff's attorneys

DuPage No. 5005
Mark D. Manetti
Manetti & Griffith, Ltd.
2021 Midwest Road, Suite 200
Oak Brook, Illinois 60523
630/590-5400

ARDC No. 6186135
Mark Rouleau
Law Office of Mark Rouleau
4777 East State Street - #7
Rockford, Illinois 61108
815/229-7246
Fax 815/229-7251

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2014 IL App (2d) 130803-U
No. 2-13-0803
Order filed June 9, 2014

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as
precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| AMERICAN ALTERNATIVE INSURANCE CO., | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 12-MR-0862 |
| LISLE-WOODRIDGE FIRE PROTECTION DISTRICT and CHICAGO METROPOLITAN FIRE PROTECTION CO., ADT SECURITY SERVICES, INC., ALARM DETECTION SERVICES, INC., D.M.C. SECURITY SYSTEMS, INC., ILLINOIS ALARM SYSTEMS, INC., and SMG SECURITY SYSTEMS, INC., | ) ) ) ) ) ) ) ) ) | |
| Defendants-Appellees. | ) ) ) | Honorable Terrence M. Sheen, Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Justices Jorgensen and Hudson concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Because, based on the allegations in the underlying federal lawsuit, the District's
acts are potentially covered by the insurance policy's coverage provisions,
plaintiff has a duty to defend the District.  Similarly, because Chicago Metro is
potentially an additional insured under the policy's coverage provisions, plaintiff
has a duty to defend Chicago Metro.  Thus, we affirmed the trial court.

**PLAINTIFF'S EXHIBIT 1**

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2014 IL App (2d) 130803-U

¶ 2    In 2012, plaintiff, American Alternative Insurance Company, filed a declaratory judgment action against defendants, Lisle-Woodridge Fire Protection District (the District), Chicago Metropolitan Fire Prevention Company (Chicago Metro), ADT Security Services, Inc., Alarm Detection Services, Inc., D.M.C. Security Systems, Inc., Illinois Alarm Services, Inc., and SMG Security Systems, Inc. (collectively, the Alarm Companies).    Plaintiff's complaint requested a finding that, pursuant to an insurance policy, it did not have a duty to defend the District or Chicago Metro in a related matter in federal court.    The trial court entered an order granting Chicago Metro's motion for a judgment on the pleadings and finding that plaintiff had a duty to defend Chicago Metro.    The trial court further granted the District's motion for summary judgment, finding that plaintiff had a duty to defend the District.    On appeal, plaintiff contends that the trial court erred when it (1) found that the allegations in the federal lawsuit allege a "wrongful act," as defined in the insurance policy; (2) found that the allegations in the federal lawsuit allege Chicago Metro's vicarious liability for the District's acts, which satisfy the "additional insured" provision of the insurance policy; and (3) struck certain exhibits plaintiff had submitted in support of its motion for summary judgment.    We affirm.

¶ 3                          I. BACKGROUND

¶ 4    The pleadings reflect that plaintiff is an insurance company.    The District was organized pursuant to the Illinois Fire Protection District Act (70 ILCS 705/1 et seq. (West 2008)), which permits the District to adopt a fire prevention code.    Chicago Metro and the other Alarm Companies provide fire alarm systems and monitoring within the District.

¶ 5    In September 2009, the District adopted an ordinance (the 2009 ordinance) that required all commercial and multi-family homes to use radio transmitters, which transmitted alarm signals to a central monitoring board owned by the District.    The 2009 ordinance further provided that

- 2 -

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2014 IL App (2d) 130803-U

Chicago Metro would install and maintain all radio transmitters. The District would collect fees for its services. In effect, all commercial and multi-family buildings would become clients of the District, which contracted with Chicago Metro to provide and to service the signaling transmitters. This displaced other Alarm Companies that had been serving clients within the district for years.

¶ 6    Thereafter, the District sent out two notices intended to obtain full compliance with the 2009 ordinance from residential and commercial clients by having the clients drop the other Alarm Companies and sign up with the District. The first notice provided:

> "If you are under contract for monitoring with another vendor, our ordinance now supersedes those contracts and makes them null and void. You will be able to excuse yourself from these contracts *** ."

A subsequent notice provided:

> "In an effort to work collaboratively with the fire alarm vendors who are currently monitoring many of our fire alarms, the [District] has decided to allow you to let your current monitoring contract expire before you join our network. *** At your earliest convenience[,] please determine when your current monitoring contract will expire and notify us of the date ***. We will be contacting you shortly before the expiration date so you can move onto our network and cancel your existing contract upon its expiration *** ."

¶ 7    According to the Alarm Companies, the actions by the District and Chicago Metro constitute a conspiracy to eliminate competition in the fire alarm services sector. On July 14, 2010, the Alarm Companies brought a lawsuit in federal court. Their original complaint contained eight counts. Count I alleged that the District and Chicago Metro violated their rights

- 3 -

2014 IL App (2d) 130803-U

under the contract clause of the United States Constitution. Count II alleged a violation of due process and equal protection. Count III alleged monopolization, attempt to monopolize, and conspiracy to monopolize in violation of § 2 of the Sherman Act (15 U.S.C. § 2). Count IV alleged conspiracy in restraint of trade in violation § 1 of the Sherman Act (15 U.S.C. § 1). Count V alleged attempted monopolization. Count VI alleged a violation of the commerce clause and sought an injunction barring enforcement of the 2009 ordinance. Count VII sought a declaratory judgment that the District lacked authority to adopt and to enforce the 2009 ordinance. Count VIII alleged tortuous interference with a contract and prospective economic advantage. The United States Court of Appeals for the Seventh Circuit has issued two separate opinions that resolved some of the issues raised by the original complaint.

¶ 8    Prior to the complaint in federal court being filed, plaintiff issued the District liability insurance, with the policy being effective from December 31, 2009, through December 31, 2010. Section I of the policy, titled "Coverages," provided:

> "**Coverage A. Insuring Agreement – Liability for Monetary Damages**
>
> 1.    We will pay those sums that the insured becomes legally obligated to pay as monetary damages arising out of an 'employment practices' offense, an offense in the 'administration' of your 'employee benefits plans', or other 'wrongful act' to which this insurance policy applies.
>
> \*\*\*
>
> 16.    'Wrongful act' means any actual or alleged error, act, omission, misstatement, misleading statement, neglect or breaches of fiduciary duty committed by you or on behalf of you in the performance of your operations, including misfeasance, malfeasance, or nonfeasance in the discharge of duties, individually or

- 4 -

Document received on 2015-07-09-14.20.18.0 Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2014 IL App (2d) 130803-U

> collectively that results directly but unexpectedly and unintentionally in damages
>
> to others."

Section II.o of the policy, entitled "Criminal Acts," provided:

> "Damages, loss or expense arising out of or contributed to by any fraudulent, dishonest,
>
> criminal or malicious act of the insured (except for 'sexual abuse'), or the willful
>
> violation of any statute, ordinance or regulation committed by or with the knowledge of
>
> the insured. However, we will defend the insured for covered civil action subject to the
>
> other terms of this coverage part until either a judgment or final adjudication establishes
>
> such an act."

The policy also provided a blanket additional insured provision:

> "2.    In addition to you, each of the following is an insured:
>
>> d.    **Blanket Additional Insured.** Any person or organization liable for your
>>
>> 'employment practices' offenses, offenses arising out of the
>>
>> 'administration' of your 'employee benefits plans,' or other 'wrongful
>>
>> acts' committed or alleged to have been committed by you is an insured
>>
>> under this coverage part, but only to the extent of that liability."

¶ 9    In July 2012, the District adopted an additional ordinance (the 2012 ordinance) that repealed the 2009 ordinance. The 2012 ordinance provided that the District would not own any transmitters. Instead, property owners could contract with private companies for fire alarm transmission and monitoring and the necessary equipment. However, signals were still required to be transmitted over the District's network to the District's receiver.

¶ 10    In October 2012, the Alarm Companies filed a supplemental complaint in the federal litigation. The supplemental complaint contained the same factual basis as the original

- 5 -

2014 IL App (2d) 130803-U

complaint and also accounted for the 2012 ordinance. It contained the same allegations, although it did not allege a violation of the commerce clause.

¶ 11    In June 2012, plaintiff filed its complaint for a declaratory judgment. As amended, count I sought a declaratory judgment that plaintiff did not have a duty to defend the District in the federal litigation. Count II sought a declaration that Chicago Metro was not an insured. Count III sought a declaratory judgment that plaintiff did not have a duty to defend Chicago Metro in the federal litigation. Count IV sought a declaratory judgment that plaintiff did not have a duty to defend under the general liability coverage form. Count V sought a declaratory judgment that plaintiff did not have a duty to defend under the commercial umbrella policy. Count VI sought reimbursement of costs from Chicago Metro.

¶ 12    Plaintiff, the District, and Chicago Metro filed cross-dispositive motions, and the Alarm Companies filed briefs objecting to certain aspects of the District's and Chicago Metro's motions. Chicago Metro also objected to certain exhibits filed by plaintiff in support of plaintiff's motion for summary judgment.

¶ 13    In July 2013, the trial court entered an order providing that plaintiff had a duty to defend both the District and Chicago Metro in the federal litigation. The trial court found that the insurance policy's "wrongful act" provision "allows coverage for intentional acts, but the 'unexpectedly and unintentionally' language limits coverage to situations where the damages produced were not expected or intended." The trial court concluded that, while some of the Alarm Companies' allegations in federal court required intentional conduct to be established, "not all of the causes of action require them to plead and prove intent," and listed counts I and II of the original federal complaint as examples. The trial court further found that plaintiff had a duty to defend Chicago Metro. The trial court concluded that, in the federal litigation, "the

- 6 -

Document received by the 2014-02-09 14:38:16 ##369130771T9772

2014 IL App (2d) 130803-U

Alarm Companies attempt to hold Chicago Metro and the District jointly and severally liable[.]
*** To do so, ***, they alleged that Chicago Metro and the District acted in concert with one
another." The trial court found that, under the theory of "in concert" liability, Chicago Metro
can be liable for the District's actions, and therefore, the policy's "additional insured" provision
was implicated. Plaintiff timely appealed.

¶ 14                                  II. ANALYSIS

¶ 15                          A. Duty to Defend the District

¶ 16    Plaintiff's first contention on appeal is that the trial court erred when it determined that
plaintiff had a duty to defend the District and Chicago Metro pursuant to the policy agreement.
In support of this contention, plaintiff argues that "there is no allegation in the underlying
complaint [in federal court] that satisfies the 'unexpectedly and unintentionally' element within
the definition of 'wrongful act.' " In its opening brief, plaintiff emphasizes that the underlying
complaint is "littered with language alleging intentional conduct" and that "[t]here should be no
doubt that the policy at issue *** does not cover insured entities for harms that it intended to
inflict." (White br., 19, 21.) The District counters that the policy applies to "wrongful acts," and
therefore, the question to be addressed is not whether its acts were intentional, but whether the
District expected or intended those acts to result in "damages" to others. (District Blue br., p.
23.) In its reply brief, plaintiff appears to concede that whether coverage applies does *not* depend
on whether the District's acts were intentional, but instead argues that "[a]ny argument that [the
District] did not know that [its] business decision would result in a claim for damages is absurd."
(Yellow br., 10.)

¶ 17    Pursuant to section 2-615(e) of the Code of Civil Procedure (the Code), any party "may
seasonably move for judgment on the pleadings." 735 ILCS 5/2-615(e) (West 2012). A

- 7 -

2014 IL App (2d) 130803-U

judgment on the pleadings is proper where the pleadings do not disclose a genuine issue of material fact and the movant is therefore entitled to a judgment as a matter of law. *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 385 (2005). A court will consider the facts apparent on the face of the pleadings, matters subject to judicial notice, and judicial admissions in the record; our review is *de novo*. *Id.* Accordingly, this court is not required to defer to the trial court's reasoning. See, *e.g.*, *Tilschner v. Spangler*, 409 Ill. App. 3d 988, 990 (2011).

¶ 18    A motion for summary judgment, although similar to a motion for a judgment on the pleadings (see *Intersport, Inc. v. National Collegiate Athletic Ass'n*, 381 Ill. App. 3d 312, 318 (2008)), is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2012). Where parties in an insurance coverage case file cross-motions for summary judgment, the parties acknowledge that no questions of material fact exist and the only issue is one of law regarding the construction of the applicable insurance policy. *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009). Our review of a trial court's determination to grant a motion for summary judgment is *de novo*. *Id.* Furthermore, we may affirm on any basis in the record, irrespective of whether the trial court relied on that ground or whether its reasoning was correct. *Allianz Insurance Co. v. Guidant Corp.*, 387 Ill. App. 3d 1008, 1026 (2008) (citing *Fabiano v. City of Palos Hills*, 336 Ill. App. 3d 635, 641 (2002)).

¶ 19    "In construing an insurance policy, we must ascertain and give effect to the intentions of the parties, as expressed in the policy language." *West American Insurance Co. v. Yorkville National Bank*, 238 Ill. 2d 177, 184 (2010). A court must construe the policy as a whole, taking

- 8 -

2014 IL App (2d) 130803-U

into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. *Pekin Insurance Co. v. Precision Dose, Inc.*, 2012 IL App (2d) 110195, ¶ 31. Unambiguous words are given their plain, ordinary, and popular meanings; and we will narrowly read a policy provision purporting to exclude or limit coverage, applying such a provision only where its terms are clear, definite, and specific. *Burcham v. West Bend Mutual Insurance Co.*, 2011 IL App (2d) 101035, ¶ 11. An ambiguous policy provision will be construed liberally in favor of coverage. *Id.* (citing *Founders Insurance Co. v. Munoz*, 237 Ill. 2d 424, 433 (2010)).

¶ 20    Further, an insurer's duty to defend is determined by comparing the allegations in the underlying complaint to the insurance policy's provisions, and an insurer's duty to defend arises even if only one of several theories of recovery is potentially within coverage under the policy. *Certain Underwriters at Lloyd's London v. Boeing Co.*, 385 Ill. App. 3d 23, 39 (2008). "If an underlying complaint alleges facts within or potentially within coverage, the insurer is obligated to defend its insured even if the allegations are groundless, false, or fraudulent." *Id.* An insurer's duty to defend an insured is broader than its duty to indemnify. *Hartford Fire Insurance Co. v. Whitehall Convalescent & Nursing Home, Inc.*, 321 Ill. App. 3d 879, 888 (2001). Thus, an insurer may be required to defend its insured even if it is not ultimately required to indemnify. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 52 (1987).

¶ 21    Finally, pursuant to the *Peppers* Doctrine, it is inappropriate for a court considering a declaratory judgment action to decide issues of ultimate fact that could bind the parties to the underlying litigation. *Allstate Insurance Co. v. Kovar*, 363 Ill. App. 3d 493, 501 (2006) (citing *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 197 (1976)). Put differently, a declaratory

- 9 -

2014 IL App (2d) 130803-U

judgment should not be used to force the parties to have a "dress rehearsal" of an important issue expected to be tried in the underlying action. *State Farm Fire & Casualty Co. v. Shelton*, 176 Ill. App. 3d 858, 865 (1989).

¶ 22    In its opening brief, plaintiff relies on *American Family Mutual Insurance Co. v. Guzik*, 406 Ill. App. 3d 245 (2010), to support its argument that the policy's coverage provisions do not apply to expected or intentional acts. In *Guzik*, the plaintiff insurance company filed a complaint for a declaratory judgment as to whether it owed insurance coverage to the insured under a homeowner's policy. The case related to an explosion that destroyed the insured's home and damaged neighboring homes. *Id.* at 245. The policy provided that the plaintiff would pay up to the coverage limit for compensatory damages that the insured was legally liable to pay as a result of bodily injury or property damage caused by an "occurrence" covered by the policy. *Id.* at 246. The policy defined an "occurrence" as an "accident" that resulted in bodily injury or property damage. *Id.* The policy's exclusionary clause further provided that coverage would be excluded for bodily injury or property damage that the insured intentionally caused, even if the actual bodily injury or property damage was different from what was expected or intended from the insured's standpoint. *Id.*

¶ 23    In 2006, an explosion occurred at the insured's home. A subsequent investigation concluded that the insured's "deliberate incendiary act of arson" caused the explosion and fire. *Id.* at 246-47. The plaintiff filed its complaint for a declaratory judgment and, after the parties filed cross-motions for summary judgment, the trial court concluded that the plaintiff owed the insured coverage under the policy. *Id.* at 247.

¶ 24    On appeal, the Third District reversed the trial court's determination. The reviewing court noted that the policy provided coverage for bodily injury or property damage caused by an

- 10 -

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2014 IL App (2d) 130803-U

"occurrence," which the policy defined as an "accident." *Id.* at 248. The court concluded that the policy language was "unambiguous that coverage is only applicable to accidents" and that the insured intentionally caused the explosion and fire. *Id.* The court went on to note that the policy also provided that coverage would be excluded if the injury or property damage was "caused intentionally" by the insured, even if the injury or damage was different from what the insured intended or expected. Thus, the court concluded that "[t]he exclusion goes beyond excluding damage that is expected and expressly excludes damage that was unexpected if it resulted from an intentional act." *Id.*

¶ 25    *Guzik* is distinguishable from the circumstances in the present case. One the one hand, in *Guzik*, the disputed policy provision involved bodily injury or property damage resulting from an "occurrence"; unambiguously provided that an "occurrence" was defined as an "accident"; and injury or damage "caused intentionally" would be excluded from coverage. On the other hand, here, the policy defined a "wrongful act" as "any actual or alleged *** act *** committed by you or on behalf of you in the performance of your operations **** *that results* directly but unexpectedly and unintentionally in damages to others." If the parties intended to exclude intentional acts from coverage, as the parties in *Guzik* did, they could have included unambiguous language in the policy to reflect that intent. They did not do so. See *The John T. Doyle Trust v. Country Mutual Insurance Co.*, 2014 IL App (2d) 121238, ¶ 18 (noting that a presumption exists against provisions that could have easily been included into contracts but were not) (citing *Lee v. Allstate Life Insurance Co.*, 361 Ill. App. 3d 970, 979 (2005)). Thus, as we read the policy in question here, the plain and unambiguous language contemplates that "any" alleged act would be covered so long as the resulting damages were unexpected and unintentional.

- 11 -

2014 IL App (2d) 130803-U

¶ 26    Having concluded that the policy's language provides coverage for intentional acts, we turn to whether the District's actions, as alleged in the underlying complaint, "unexpectedly and unintentionally" resulted in damages to others.    The District directs us to *Giamanco v. Giamanco*, 253 Ill. App. 3d 750 (1993), where this court distinguished "injury," "damage," and "damages."  Specifically, we noted:

> "Although the words 'damage,' 'damages,' and 'injury' are sometimes treated loosely as synonymous, there is material distinction between them.  'Injury' is the illegal invasion of a legal right; 'damage' is the loss, hurt[,] or harm which results from the injury; and 'damages' are the recompense or compensation awarded for the damage suffered.  ***  The word 'damage' is to be distinguished from its plural 'damages,' which means the compensation in money for a loss or damage." *Id.* at 758.

Thus, the question we must determine is whether the District's actions "unexpectedly and unintentionally" gave rise to the Alarm Companies' damages.

¶ 27    In *Bay State Insurance Co. v. Wilson*, 96 Ill. 2d 487 (1983), our supreme court addressed "expected or intended" injuries in the context of an insurance policy.  In *Bay State*, James Johnson shot Gerald Wilson in Johnson's home.  *Id.* at 490.  Thereafter, Wilson sued Johnson but the plaintiff refused to defend the action, claiming that the complaint alleged an intentional act, which was not covered under the policy.  *Id.*  Johnson's homeowner's insurance policy provided that "[t]he policy does not apply *** to bodily injury or property damage which is either *expected* or *intended* from the standpoint of the insured." (Emphasis in original.) *Id.* at 490-91. The plaintiff ultimately provided counsel to Johnson, with a reservation of rights.  *Id.* Thereafter, Johnson died, and the administer of his estate assigned Johnson's claim against the plaintiff to Wilson.  *Id.* at 491.  Following a bench trial on the plaintiff's declaratory judgment

- 12 -

2014 IL App (2d) 130803-U

action, the trial court concluded that Johnson's primary intent was self defense and that he lacked the specific intent to harm Wilson. Therefore, the trial court concluded that the policy covered the shooting and ordered the plaintiff to pay Wilson a previously entered $100,000 judgment entered against Johnson. *Id.* at 491-92.

¶ 28   Our supreme court affirmed a determination by the appellate court to reverse the trial court's finding that the policy covered the shooting. The supreme court began its analysis by noting that the case did not present a situation where coverage could be extended because the injury was the unintended result of an intentional act. Rather, the case "manifests" an injury that was an "intended and expected result" of an intentional act. *Id.* at 493. The supreme court noted that the terms "intentional" and "expected" in insurance clauses were not treated as synonyms because if they were, no purpose would be served by including them in the same clause. *Id.* The supreme court concluded that "intent" required a greater degree of proof than establishing an "expectation." *Id.* at 494.   In holding that the policy did not cover Johnson's shooting, the supreme court concluded, "[i]njuries which are of such a nature that they should have been *reasonably anticipated* by the insured are 'expected' injuries." (Emphasis added.) *Id.*

¶ 29   While we are cognizant of the differences between the circumstances present in *Bay State* from those present here, we find the supreme court's definitions of "intended" and "expected" injuries instructive in resolving this case. Pursuant to our supreme court's definition of "expected," the definition of "unexpected" necessarily must be injuries, or in this case, "damages" that should *not* have been reasonably anticipated by the insured. As noted, the policy here defined a wrongful act as "any *** alleged *** act *** that results directly but unexpectedly and unintentionally in damages to others." Thus, in light of the "unexpectedly" language contained in the policy here, the question we must consider is whether the District

- 13 -

2014 IL App (2d) 130803-U

should have reasonably anticipated that "damages" would have resulted from the allegations in the underlying complaint, *i.e.*, to pay any recompense.

¶ 30    In this case, the allegations in the federal lawsuit potentially come within the policy's coverage provisions, and therefore, plaintiff has a duty to defend the District. Counts III and IV of the Alarm Companies' complaint in the federal lawsuit allege violations of the Sherman Act, which requires the Alarm Companies to establish damages. See *In re Currency Conversion Fee Antitrust Litigation*, 264 F.R.D. 100, 114 (S.D.N.Y. 2010) (noting that the three required elements of an antitrust claim under the Sherman Act are (1) a violation of antitrust law; (2) injury and causation; and (3) damages). Likewise, the Alarm Companies will have to establish damages under count VIII of their federal complaint, which alleged tortuous interference with a contract. See *Complete Conference Coordinators, Inc. v. Kumon North America, Inc.*, 394 Ill. App. 3d 105, 109 (2009) (noting that damages is an element of tortuous interference with a contractual relationship). Thus, in order to find in plaintiff's favor in this case, we would have to conclude that, *as a matter of law*, not only did the District's acts in passing the ordinances result in damages, but those damages were either expected or intended, or both. We believe that such a ruling would be premature and the question of damages should be left to the trier of fact in the federal litigation. See *Shelton*, 176 Ill. App. 3d at 865 (holding that whether the insured expected or intended injuries should be resolved by the fact finder in the underlying lawsuit).

¶ 31    Nonetheless, although our holding is that any determination regarding damages on counts III, IV, and VIII of the Alarm Companies' federal complaint would be premature, we acknowledge that there is *potential* coverage for the District for these claims. See *Chandler v. Doherty*, 299 Ill. App. 3d 797, 802 (1998). That is, it is at least conceivable that, even if the Alarm Companies are able to establish damages in the federal litigation, those damages were

- 14 -

Document received on 2015-07-09.14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

2014 IL App (2d) 130803-U

unexpected and unintended, and thus coming within policy's coverage provisions. Because there is the potential for coverage, plaintiff has a duty to defend the District. See *id.* ("noting that, "[u]nder established precedent in Illinois," an insurer has a duty to defend when there is a potential for coverage).

¶ 32          B. Chicago Metro as an Additional Insured

¶ 33    The second issue on appeal is whether Chicago Metro is an additional insured under the policy. Plaintiff argues that "Chicago Metro faced only the direct liability of an allegedly negligent party, not the vicarious liability of a blameless party who is legally responsible for the negligence of someone else." Chicago Metro counters that it can be liable for the ordinances being enacted only if plaintiff proves that the District enacted the ordinance "in concert with Chicago Metro."

¶ 34    "In determining whether an insurer must defend a party that is an additional insured ***, the court must compare the allegations of the underlying complaint against the party to the provisions of the policy, liberally construing both in favor of the additional insured party." *Pekin Insurance Co. v. Hallmark Homes*, L.L.C., 392 Ill. App. 3d 589, 593 (2009). Plaintiff is obligated to defend Chicago Metro if, based on the allegations in the federal complaint, Chicago Metro potentially falls within the policy's terms. See *id.* at 594.

¶ 35    Initially, we note that plaintiff argues that the trial court erred by not considering a copy of the federal district court's order denying Chicago Metro's motion for summary judgment. That order found, in part, that "Chicago Metro was not a passive player in the design and implementation of the scheme to create a District[-]owned wireless network." According to the District, this establishes that Chicago Metro was not an innocent bystander that was a lucky beneficiary of the District's action.

- 15 -

2014 IL App (2d) 130803-U

¶ 36    We find it unnecessary to resolve this issue because, even if Chicago Metro was not an
"innocent bystander," the policy does not limit additional-insured coverage to such people or
entities.  As noted, when construing an insurance policy, "we must ascertain and give effect to
the intentions of the parties, as expressed in the policy language." *West American Insurance Co*,
238 Ill. 2d at 184.  The policy language provides:

> "Any *** organization liable for your *** 'wrongful acts' *** alleged to have been
> committed by you is an insured under this coverage part, but only to the extent of that
> liability."

¶ 37    In this case, we find this policy language unambiguous.  Here, the underlying complaint
makes multiple allegations that the District and Chicago Metro were acting in concert with each
other.  For example, paragraph 112 of the supplemental complaint alleged that "[t]he active
participation of the District with Chicago Metro constitutes a conspiracy to monopolize" the fire
monitoring and alarm market within the District.  In Illinois, "[a] civil conspiracy giving rise to a
cause of action *** involves a combination of two or more persons for the purpose of
accomplishing, through concerted action, either an illegal object or a legal object by illegal
means." *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 350 (2000).  Thus,
Chicago Metro's liability for the conspiracy is dependent on the District adopting the 2009 and
2012 ordinances.  As a result, if the Alarm Companies prove their allegations in the federal
lawsuit, Chicago Metro potentially could be "an organization liable for [the District's] 'wrongful
acts' alleged to have been committed by [the District]," and would be an additional insured under
the policy.  Therefore, because we must construe the policy liberally in favor of Chicago Metro
(*Hallmark Homes*, 392 Ill. App. 3d at 594) and, as noted above, an insurer's duty to defend is
broader than its duty to indemnify, *Whitehall Convalescent & Nursing Home, Inc.*, 321 Ill.

- 16 -

2014 IL App (2d) 130803-U

App. 3d 879, 888 (2001), plaintiff has a duty to defend because, based on the allegations in the federal lawsuit, Chicago Metro could potentially be an additional insured under the policy.

¶ 38                                III. CONCLUSION

¶ 39    For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed.

¶ 40    Affirmed.

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917

ILND 450 (Rev. 10/13) Judgment in a Civil Case   Case: 1:10-cv-04382 Document #: 557 Filed: 07/21/14 Page 1 of 1 PageID #:9283

# IN THE UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN DISTRICT OF ILLINOIS

ADT Security Services, Inc. et al            )
           Plaintiff(s)                )
                       )   Case No. 10 C 4382
   v.                               )
Lisle-Woodridge Fire Protection District et al   )
           Defendant(s)

## JUDGMENT IN A CIVIL CASE

Judgment is hereby entered (check appropriate box):

☐    in favor of plaintiff(s)

and against defendant(s)

in the amount of $              ,

    which ☐ includes     pre–judgment interest.

          ☐ does not include pre–judgment interest.

Post-judgment interest accrues on that amount at the rate provided by law from the date of this judgment.

Plaintiff(s) shall recover costs from defendant(s).

---

☐    in favor of defendant(s)

and against plaintiff(s)

Defendant(s) shall recover costs from plaintiff(s).

---

☑    other: Defendants motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) due to mootness is granted. Civil case terminated, with jurisdiction retained to consider and determine issues of attorneys' fees, costs and expenses. Plaintiffs' prior motion to set discovery is also rendered moot is denied on that ground.

---

This action was *(check one)*:

☐ tried by a jury with Judge                  presiding, and the jury has rendered a verdict.

☐ tried by Judge                      without a jury and the above decision was reached.

☑ decided by Judge Milton I. Shadur       a motion to dismiss

Date: 7/21/2014                 Thomas G. Bruton, Clerk of Court

                                  /s/ Terry Perdue         ,Deputy Clerk

# PLAINTIFF'S EXHIBIT 2

Document received on 2015-07-09-14.20.18.0  Document accepted on 07/09/2015 14:38:16 # 3691302/17043377917